SHEPARD'S PHARMACY, INC., & another[1] vs. STOP & SHOP
COMPANIES, INC.

No. 93-P-72.

Hampden. February 7, 1994. - October 21, 1994.

Present: SMITH, KAPLAN & IRELAND, JJ.

*Consumer Protection Act*, Unfair or deceptive act, Businessman's claim.
*Privacy*. *Damages*, Privacy.

At the trial of an action brought pursuant to G. L. c. 93A, certain of the
judge's findings were not supported by the evidence and the other find-
ings did not support a conclusion that there was a violation of c. 93A.
[520-522]
In the circumstances of a civil action, a judge's separate award of substan-
tial damages on a count alleging invasion of privacy by reason of the
defendant's misappropriation of the plaintiff's name and likeness was
not supported by the evidence and was inconsistent with the jury's dam-
age findings on the other counts that had been submitted to them. [523-
524]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 12, 1990.

Claims by the plaintiffs alleging invasion of privacy and
violations of G. L. c. 93A were heard by *William H. Welch*,
J.

*David A. Guberman* (*Rhonda B. Parker* with him) for the
defendant.

*Jeffrey L. McCormick* for the plaintiffs.

SMITH, J. The plaintiffs, Shepard's Pharmacy (pharmacy)
and its owner, William N. Shepard, filed a multicount com-
plaint against the defendant, Stop & Shop Companies, Inc.
(Stop & Shop). The relevant counts are: Count I, which al-
leged that Stop & Shop had tortiously interfered with the
pharmacy's business relations; Count III, which alleged that

---

[1]William N. Shepard.

Stop & Shop had violated G. L. c. 214, § 1B (invasion of privacy); Count V, which alleged intentional infliction of emotional distress upon Shepard; Count VIII, which alleged violations of G. L. c. 93A; and Count X, which alleged violation of Shepard's civil rights pursuant to G. L. c. 12, § 11I.

At the close of the trial, the judge submitted special questions to the jury on Counts I and V. He reserved decisions on Counts III, VIII, and X to himself. On Count I, the jury found that Stop & Shop had tortiously interfered with the business relations between the pharmacy and its customers and assessed $750 in damages; it also found that Stop & Shop did not tortiously interfere with any advantageous business relations between Shepard and Maxi Drug, a prospective buyer of Shepard's business. On Count V, the jury found in favor of Stop & Shop. On Count III the judge ruled that Stop & Shop had violated Shepard's rights to privacy and awarded $75,000 in damages. On Count VIII the judge ruled that Stop and Shop had violated G. L. c. 93A in that it had committed an unfair and deceptive act and awarded $75,000 in damages. The judge further ruled that the violation was wilful and knowing and awarded double damages for total damages of $150,000 plus $58,662.05 in attorney's fees. On Count X the judge found that the conduct of Stop & Shop did not violate Shepard's civil rights.

On appeal, Stop & Shop challenges the judge's rulings of violations of G. L. c. 93A and G. L. c. 214, § 1B. It argues that the evidence did not support either of the judge's decisions.

1. *The G. L. c. 93A claim.* The judge filed a memorandum of decision containing his findings of fact and rulings of law. We summarize the facts, some of which are in dispute on appeal. In March, 1990, a representative of Stop & Shop approached Shepard and inquired if Shepard would be interested in selling his pharmacy, located in West Springfield, to Stop & Shop and becoming a staff pharmacist at the Stop &

Shop supermarket in West Springfield.[2] Shepard indicated his interest.

During the course of the negotiations, Stop & Shop offered to pay Shepard the sum of $25,000 for the prescription portion of his business, to purchase his inventory except certain items, and to employ Shepard for two years as a staff pharmacist at its West Springfield supermarket at a salary of $47,000 to $48,000 per year. Shepard responded that he was willing to sell to Stop & Shop but wanted enough money from the sale of the inventory to pay all his debts and "to come out whole." The judge found that Shepard never disagreed with the offer of $25,000, and there was no real disagreement as to the salary he would receive.

Negotiations reached the point where on August 15, 1990, the parties discussed a September 27, 1990, closing date for the transaction. Also around August 15, Shepard notified his attorney that he had been negotiating with Stop & Shop. On September 17, 1990, Shepard's attorney received a purchase and sale agreement from Stop & Shop. The agreement included a clause providing that Shepard would not compete within a ten-mile radius of the West Springfield Stop & Shop for a period of three years from the date of the closing of the transaction.[3]

On September 18, 1990, a representative from another company, Maxi Drug, met with Shepard and discussed the possibility of purchasing Shepard's pharmacy for $125,000 plus his inventory and hiring him as a pharmacist on terms

---

[2]In 1987, the Legislature had enacted a statute permitting supermarkets to have retail pharmacies located within their premises. See St. 1987, c. 465, § 22, amending G. L. c. 112, §§ 38, 39.

[3]Two clearly erroneous findings by the judge must be noted here. The judge's finding that the purchase and sale agreement was not sent to Shepard and his lawyer until around September 19 or 20 is at odds with the undisputed evidence that Shepard's attorney received it on September 17. The judge also concluded that the noncompetition clause stated that "Shepard would not compete for a period of three years after any termination whether by Stop & Shop or Shepard but [his employment with Stop & Shop] was for only two years." The judge misread the clause. The period of time is from the date of the closing of the transaction, not the date of Shepard's termination.

comparable to those offered by Stop & Shop. Maxi Drug knew nothing of Shepard's negotiations with Stop & Shop until September 18, 1990, when Shepard told Maxi Drug that he had met with other people about a possible sale.[4]

On or about September 24, 1990, Shepard learned that Stop & Shop intended to announce in a circular to be included in the September 30 edition of the Sunday Republican that it had purchased the pharmacy and to invite Shepard's customers to shop at its pharmacy located in its supermarket in West Springfield where Shepard would be employed. Shepard's photograph was to accompany the announcement.[5] On September 26, Shepard indicated to Stop & Shop that their deal was off.

Shepard and his attorney met with representatives of Stop & Shop on September 28 in an attempt to have Stop & Shop withdraw its circular from the Sunday newspaper. Stop & Shop stated it would be too expensive and refused, but it increased its offer for the prescription portion of the business from $25,000 to $50,000. A representative of Stop & Shop acknowledged that it had "botched" the transaction. Shepard refused the increased offer and insisted that Stop & Shop withdraw its circular. Stop & Shop did not do so but did print a quarter-page statement in the same edition of the newspaper, stating that the circular was in error regarding the purchase of Shepard's pharmacy. Sometime after the circular was published, Maxi Drug withdrew from its negotiations with Shepard, claiming it was doing so because the negotiations had become public knowledge and because it had the impression that Shepard and Stop & Shop "were sub-

---

[4]The judge did not make any finding as to when Stop & Shop discovered that Maxi Drug was interested in purchasing the pharmacy, but Shepard testified he did not tell Stop & Shop about Maxi Drug's interest until September 28.

[5]Shepard's photograph had been taken in August by a photographer hired by Stop & Shop. The circumstances surrounding the taking of the photograph loomed large in the judge's determination that Stop & Shop violated c. 93A. The judge's findings on that point are challenged by Stop & Shop. We discuss the controversy later in this opinion.

stantially further along in . . . conversations than was represented."

The judge concluded that Stop & Shop was "guilty of an unfair and deceptive business practice in that [it] applied economic coercion beyond what would be proper in the market place, [was] unethical, overbearing and unscrupulous and [its] conduct was a substantial departure from the fair dealing of the market place." In reaching his conclusion, the judge considered "the extreme competition the evidence disclosed in the supermarket industry and the need for a drug department, the way Stop & Shop handled this purchase with no written agreement until one week before the closing, the introduction of a one-sided non-compete employment clause, the less than credible statement the photographer could only come to the Riverdale store once a year, the use of his [Shephard's] picture without permission, [and] the admission by the defendant's official [that] they botched the purchase."

General Laws c. 93A, §§ 2 and 11, makes unlawful, among other things, "unfair or deceptive acts or practices . . . ." "Courts have deliberately avoided setting down a clear definition of conduct constituting a violation of G. L. c. 93A." *Spence* v. *Boston Edison Co.*, 390 Mass. 604, 616 (1983). We have noted, however, that "[t]he statute 'does not contemplate an overly precious standard of ethical or moral behavior. It is the standard of the commercial market place.'" *USM Corp.* v. *Arthur D. Little Sys., Inc.*, 28 Mass. App. Ct. 108, 124 (1989), quoting from *Wasserman* v. *Agnastopoulos*, 22 Mass. App. Ct. 672, 679 (1986). "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, . . . the boundaries of what may qualify for consideration as a c. 93A violation is a question of law" (citation omitted). *Schwanbeck* v. *Federal-Mogul Corp.*, 31 Mass. App. Ct. 390, 414 (1991), *S.C.*, 412 Mass. 703 (1992).

Stop & Shop attacks the judge's findings of fact — in particular, the judge's findings concerning the circumstances surrounding the taking of Shepard's photograph. It also con-

tends that the other findings of the judge do not amount to a violation of G. L. c. 93A.

The judge made the following findings of fact concerning the taking of Shepard's photograph. "In late August Stop & Shop was pressing Shepard to have his picture taken for any advertisement relative to the opening of the new acquisition which Stop & Shop was hoping would be September 27, 1990. Mr. Shepard was not agreeable as he told them they did not have a deal. The Stop & Shop representatives told him the lack of a firm deal would not matter as the photographer was coming to the Riverdale store on a certain date and would not be back for a long time." The judge then stated, "I believe this was just a ruse to get his picture for the circular they were planning to print up as his picture certainly could have been taken on short notice once the agreement was finalized." As noted, in his ultimate finding on this point, the judge stated that Stop & Shop made "the less than credible statement the photographer could only come to the Riverdale store once a year . . . ."

There is simply no evidence that supports the judge's findings concerning the circumstances surrounding the taking of Shepard's photograph or, specifically, that conduct by Stop & Shop constituted a "ruse." Shepard testified that a representative of Stop & Shop told him that Stop & Shop "typically takes pictures of employees which they display proudly, that on a particular occasion or date, arrangements had been made with a photographer out of Connecticut to come to West Springfield to take pictures of Stop & Shop employees and could I possibly be there for that photograph." Shepard testified that he agreed to having his photograph taken but told Stop & Shop that it could not be used unless both parties agreed to the sale of the pharmacy. There was no evidence whatsoever that Stop & Shop told Shepard that the photographer had to take the photograph on a particular date because, as the judge found, he "would not be back for a long time" or that Stop & Shop told Shepard that "the photographer could only come to the Riverdale store once a year."

The other findings of the judge do not amount to a c. 93A violation. The judge's conclusion that the purchase and sale agreement contained a "one-sided non-compete employment clause" was based on an erroneous interpretation of the agreement (see note 3, *supra*). Moreover, the purchase and sale agreement was never executed. That Stop & Shop did not send the purchase and sale agreement to Shepard's lawyer until one week before the scheduled closing may have been "sloppy" but did not amount to a violation of c. 93A. An admission that the transaction was "botched" is not the same as admitting that Stop & Shop engaged in an unfair or coercive practice. Stop & Shop's behavior in offering an additional $25,000 to Shepard during the course of the September 28 meeting certainly did not have "an extortionate quality that gives [the increased offer] the rancid flavor of unfairness." *Atkinson* v. *Rosenthal,* 33 Mass. App. Ct. 219, 226 (1992). In sum, nothing in Stop & Shop's conduct "attain[ed] a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Levings* v. *Forbes & Wallace, Inc.,* 8 Mass. App. Ct. 498, 504 (1979).

Further, even if there existed an unfair or deceptive act, "[t]o prevail on a claim under G. L. c. 93A, § 11, the plaintiff must show a causal connection between the defendant's unfair and deceptive act and the alleged loss of money or property and that such loss was reasonably foreseeable as a result." *International Totalizing Sys., Inc.* v. *PepsiCo, Inc.,* 29 Mass. App. Ct. 424, 436 n.18 (1990), citing *Kohl* v. *Silver Lake Motors, Inc.,* 369 Mass. 795, 800-801 (1976). "[I]n the absence of a causal relationship between the alleged unfair acts and the claimed loss, there can be no recovery." *PDM Mechanical Contractors, Inc.* v. *Suffolk Constr. Co.,* 35 Mass. App. Ct. 228, 237 (1993). The loss of any deal with Maxi Drug was not reasonably foreseeable by Stop & Shop; it never learned about Shepard's negotiations with Maxi Drug until the September 28 meeting (see note 4, *supra*), at which point Stop & Shop had already decided to run the circular.

2. *The invasion of privacy claim.* General Laws c. 214, § 1B, as inserted by St. 1974, c. 193, § 1, states, in relevant part, "A person shall have a right against unreasonable, substantial or serious interference with his privacy . . . ." The judge found that "Stop & Shop never had permission, oral or written, to announce the purchase and sale or to print Shepard's picture with the announcement he had joined Stop & Shop and all his customers should now get their prescriptions filled at Stop & Shop." The judge concluded that Stop & Shop's action was "an unreasonable, substantial and serious interference with [Shepard's] privacy."

Information about the negotiations, and what Stop & Shop thought was the state of the transaction, was in the common possession of both Shepard and Stop & Shop. Shepard did not produce any evidence that there was an agreement with Stop & Shop to keep the negotiations confidential. In fact, Shepard testified that he told Maxi Drug that he had met with other people about a sale of his pharmacy. Further, Shepard admitted that he was agreeable to the publication of his photograph, in the event the sale was consummated.

In these circumstances, Shepard cannot claim invasion of his interest in seclusion or in being free from unreasonable publicity about his private life. See Restatement (Second) of Torts § 652A(2)(1977), which recognizes protection of one's seclusion and private life as two of four privacy interests. Rather, it appears that the judge concluded that Stop & Shop invaded Shepard's privacy by misappropriating Shepard's name or likeness. See Restatement (Second) of Torts § 652C. According to comment b of § 652C, "[t]he common form" that a violation of this interest takes "is the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose." Here, there was sufficient evidence to support the judge's finding that by means of its circular Stop & Shop unreasonably, substantially, and seriously misappropriated Shepard's name and likeness.

While the finding of an invasion of privacy was warranted, we are not able to conclude that the separate damages

awarded by the judge for that tort were supported by the evidence. As to damages, the judge found that Shepard "suffer[ed] some loss of business, embarrassment and humiliation in the view of his customers and friends. He lost the benefit of the potential sale to Maxi Drug which terminated because of the publicity as [Maxi Drug's representative] did not want others in the industry to think he was being unscrupulous and getting in their affairs." The judge awarded $75,000 for the violation of G. L. c. 214, § 1B. This finding was inconsistent with the judge's announcement in his memorandum of decision that he "accepted [the jury's] findings." The jury found that: (1) the pharmacy incurred only $750 in damages for Stop & Shop's conduct in tortiously interfering with the business relations between the pharmacy and its customers, (2) Stop & Shop did not tortiously interfere with any advantageous business relations between Shepard and Maxi Drug, and (3) Stop & Shop did not intentionally inflict emotional distress on Shepard.

Shepard has not pointed (below or in his brief on appeal) to any additional bases for recovery of damages other than those relied on by the judge, and those that have been relied upon are duplicative of or inconsistent with the jury's damage findings. Cf. Restatement (Second) of Property § 652A comment d (where privacy is invaded in more than one way, the plaintiff may have only one recovery of his damages upon one or all of the different grounds). Cf. also *Canal Elec. Co. v. Westinghouse Elec. Corp.*, 406 Mass. 369, 378-379 & n.10 (1990) (where breach of warranty claim is duplicative of c. 93A claim, no recovery of damages under both theories, citing *Linthicum* v. *Archambault*, 379 Mass. 381, 388 [1979]). Neither does it appear that Stop & Shop obtained any benefit through the use of Shepard's photograph, so restitution of profits is not an option. Cf. Restatement of Restitution § 136 (1937). In these circumstances, a separate award of damages for the tort of invasion of privacy was error.

The judgment against Stop & Shop on Count VIII is vacated. The matter is remanded to the Superior Court where

a new judgment shall issue dismissing that count and vacating the separate award of damages on Count III.

*So ordered.*