Fremont-Smith, J.
INTRODUCTION
Although discovery is not yet complete, the defendants in this (as yet uncertified) class action suit, CVS Pharmacy, Inc. (“CVS”), Elensys Care Services, Inc. (“Elensys”) and a number of pharmaceutical manufacturers, seek summary judgment on plaintiffs’ claims that the defendants have benefitted financially from a marketing scheme which violated their privacy and other rights. On the present record, this Court DENIES CVS’s motion for summary judgment as to plaintiff Kelley, DENIES without prejudice CVS’s motion as to plaintiff Weld, and DENIES without prejudice the motions for summary judgment of Elensys, Merck & Co., Inc. (“Merck”), and Glaxo Wellcome, Inc. (“Glaxo").[3] The Court further ALLOWS plaintiffs’ motion for a continuance to complete necessary discovery.
BACKGROUND
The summary judgment record indicates the following:[4]
At some point in 1998,[5] CVS began a Patient Compliance Program ("PCP”), whereby it sent to certain designated CVS customers mailings which either reminded them to refill their medication prescriptions, provided information concerning new drugs, or generally encouraged customers to discuss potential medical conditions with their doctors. Fundir g for these mailings was provided by the defendant drug manufacturers, and CVS maintains that each mailing stated the name of the drug manufacturer financing said mailing.
Plaintiffs Kelley and Weld each had prescriptions filled at CVS. As a result, CVS’s databases contained both Weld’s and Kelley’s names, addresses, dates of birth, prescription and medical information.
It is undisputed that in June 1997, Kelley received a mailing concerning high cholesterol which, although it did not state or imply that Kelley had high cholesterol, suggested that Kelley speak -with his physician about the dangers thereof. The letter indicated that it was paid for by Merck. In his deposition, Kelley, who suffers from diabetes, testified that in the fall of 1997, he received two other mailings concerning diabetes medications, but he could not remember who sent the mailings. He also testified that prior to using CVS, he had his prescriptions filled at a drug store (possibly Oseo, which later became a Star Market). CVS admits that it did generate one diabetes mailing in October 1997, but maintains that it never sent Kelley any mailings concerning diabetes medications, as the October 1997 diabetes mailing targeted customers who had filled a particular type of prescription at CVS, and Kelley never had such a prescription filled there.
It is undisputed that Weld never received any mailing. CVS contends that he was also never targeted to receive a mailing, and that CVS thus never disseminated any information about Weld to any of the other defendants.
CVS states that it employed a highly technical and impersonal means of targeting customers to receive particular mailings.[6] For the high cholesterol mailing, CVS personnel conducted a key word search of CVS’s entire customer database based on the customer’s condition or prescriptions, and arrived at a target list of customers designated to receive the cholesterol mailing. Kelley was targeted because he suffers from diabetes. Because Weld’s profile did not contain any desirable criteria, he was not targeted to receive a mailing. A list of the designated customers’ names, addresses and dates of birth was then compiled on a diskette, which CVS gave to Elensys. CVS customers were never informed of, or asked to provide consent for, this program.
CVS had contracted with Elensys to carry out the actual mailings. Their agreement provided that Ele-nsys would receive customer prescription information: “[CVS] agrees to provide to Elensys all pharmacy records and prescription information which Elensys and [CVS] mutually agree are necessary for Elensys to render the Patient Compliance Services." Their agreement also contained strict confidentiality provisions that required Elensys to take extensive measures to protect the confidentiality of the patient information provided by CVS.[7]
Elensys maintains in affidavits that its only involvement in the high cholesterol mailing received by Kelley was its application of a computer program to the diskette which eliminated duplicative names and corrected address errors. Elensys then transmitted a final *218 list of names and addresses to W.A. Wilde, a mail fulfillment house which Elensys had engaged to stuff envelopes and send out the letters.[8] The defendants assert that the mailing procedure was also highly technical and required minimum human involvement.
The defendant drug manufacturers assert that they were given no CVS customer information, were given no access to CVS’s customer databases, but that their only involvement was providing CVS -with information about the drugs being promoted and their funding of the mailings.
After newspaper articles about CVS’s PCP first appeared in February 1998, CVS, on February 18, 1998, discontinued the PCP.[9] Elensys states that it has since destroyed or returned to CVS all customer information in its possession and has not performed any further work for CVS. Although CVS’s public announcement stated that the PCP was “suspended,” CVS now states that the PCP has been terminated altogether. Plaintiffs assert there is a risk that CVS might renew the PCP.
Defendants now seek summary judgment on all counts of plaintiffs’ complaint. In count one, plaintiffs allege that all of the defendants violated the plaintiffs’ right of privacy as set forth in G.L.c. 214, §1B. In counts two and three, plaintiffs allege that CVS breached its duty of confidentiality and fiduciary duty to the plaintiffs. In count four, plaintiffs assert that defendants CVS, Elensys and Glaxo violated c. 93A. Count five alleges 'Tortious misappropriation of Private and Personal Information” against all defendants. Finally, in count six, plaintiffs charge all defendants with membership in a conspiracy to violate plaintiffs’ rights.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Massachusetts Bay Transp. Auth. v. Allianz Ins. Corp., 413 Mass. 473, 476 (1992). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. The nonmoving party cannot defeat the summary judgment motion by resting on his or her pleadings and mere assertions of disputed facts to defeat the motion. Lalonde v. Eissner, 405 Mass. 207, 209 (1989).
A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “A complete failure of proof concerning an essential element of the nonmoving party’s case renders all other facts immaterial.” Lyon v. Morphew, 424 Mass. 828, 831 (1994). In sum, a judge must ask whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
This Court has discretion to refuse to decide a motion for summary judgment and to grant a continuance to permit further discovery “(s]hould it appear from the affidavits of a party opposing the motion [for summary judgment] that he cannot for reasons stated present by affidavit facts essential to justify his opposition.” Mass.R.Civ.P. 56(f). See Commonwealth v. Fall River Motor Sales, Inc., 409 Mass. 302, 307 (1991). A continuance may be particularly warranted where knowledge about relevant issues is exclusively within a defendant’s possession. Loew’s, Inc. v. Bays, 209 F.2d 610, 645 (5th Cir. 1954); Booth v. Security Mut. Life. Ins. Co., 155 F.Supp. 755, 762 (D.N.J. 1957).
CVS
CVS, as well as the other defendants, contends, correctly, that if the named representative plaintiffs, Kelley and Weld, cannot maintain a cause of action, then the class action is not viable. See Doe v. Governor, 381 Mass. 702, 704-05 (1980). However, as discussed below, the present record indicates that there are genuine issues of material fact as to the legality of CVS’s conduct towards the named plaintiffs Weld and Kelley, so that summary judgment is inappropriate.
1. Count One, G.L.c. 214, §1B
G.L.c. 214, §1B provides that “[a] person shall have a right against unreasonable, substantial or serious interference with his privacy.” CVS urges this Court to grant summary judgment in its favor on this count, as the only information it disclosed about the plaintiffs was Kelley’s name, address and date of birth, which, as a matter of law, cannot constitute a violation of G.L.c. 214, §1B.[10] It is not clear, however, that disclosure of such information may not constitute an actionable violation of Kelley’s privacy rights.
CVS relies on Pottle v. Sch. Comm. of Braintree, 395 Mass. 861 (1985), for the proposition that disclosure of names and addresses alone may never constitute a violation of privacy. However, the issue in Pottle was factually more narrow; namely, whether the disclosure of the names and addresses of public school employees fell within the privacy exemption of the public records statute, G.L.c. 4, §7, 26th(c).[11] Although the court said that names and addresses are not “intimate details of a highly personal nature,” the court further noted that “public employees, by virtue of their public employment, have diminished expectations of privacy,” so that such information could be disclosed. Id. *219 at 866. In the present case, however, the plaintiffs, who are not public employees, have not similarly relinquished any expectation of privacy. Furthermore, in Doe v. Registrar of Motor Vehicles, 26 Mass.App.Ct. 415 (1988),[12] which concerned the availability of license applicant information such as name, address, date of birth, social security number and height under G.L.c. 90, §30, the court found that such information was not a “public record," so that the disclosure of such information might constitute an unwarranted invasion of privacy, even though it was collected for a public purpose.[13] See Doe, supra, at 429.
Moreover, plaintiffs complain not only about the unauthorized use of their names, addresses and dates of birth, but complain that CVS’s marketing program as a whole, which involved at least the use of Kelley’s name, address and date of birth iri conjunction with the systematic searching of customer prescription records, constitutes a violation of plaintiffs’ right of privacy. The broader question presented in this case is thus whether CVS’s implementation of its PCP constituted a violation of G.L.c. 214, §1B. A viable claim under G.L.c. 214, §1B consists of a violation of privacy involving the named plaintiffs that is both unreasonable and substantial or serious. O’Connor v. Police Comm'r of Boston, 408 Mass. 324, 330 (1990). While most claims under G.L.c. 214, §1B have concerned nonconsensual disclosures of private information,[14] the statute does not require disclosure of private information to the public at large, see Tower, supra at n. 14, nor does it rule out at least the possibility that the use of names and addresses for the purposes involved here, might constitute a violation. See, e.g., Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 519-21 (1991) (although particular facts warranted summary judgment in favor of defendant, court recognized possibility that telephone solicitation could, in other circumstances, be a serious or substantial invasion of privacy so as to constitute a violation): Ellis v. Safety Ins. Co., 41 Mass.App.Ct. 630, 638 (1996) (whether defendants invaded plaintiffs’ privacy by following them in intrusive manner presented jury question): Pressman v. Brigham Medical Group Foundation, Inc., 919 F.Supp. 516, 524 (D.Mass. 1996) (whether defendants’ unauthorized review of medical records constituted privacy violation presented jury question). Moreover, in Schlesinger, the Supreme Judicial Court indicated that the statute should be applied on a case-by-case basis: “We have also taken into account that the Legislature appears to have framed the statute in broad terms so that courts can develop the law thereunder on a case-by- case basis, by balancing relevant factors, . . . , and by considering prevailing societal values and the ability to enter orders which are practical and capable of reasonable enforcement.” Schlesinger, supra, at 519.
As the broader issue of whether CVS’s conduct as to plaintiff Kelley[15] constituted a violation of G.L.c. 214, § IB presents a novel question suitable for initial resolution by a jury,[16] summary judgment on count one is DENIED as to plaintiff Kelley. As to Weld, whose name and prescription information were contained within the database searched by CVS as part of its marketing program, but who never received a mailing, the Court DENIES, without prejudice, CVS’s motion for summary judgment. Plaintiffs assert that further discovery is needed to ascertain whether CVS disclosed any prescription information concerning Weld. Defendants may renew their motion as to Weld at the close of discovery.
2. Counts Two, Breach of the Duty of Confidentiality, and Count Three, Breach of Fiduciary Duty
Although this Court is not aware of any case which holds that pharmacists owe their customers a duty of confidentiality, it is reasonable to infer that a person who imparts private medical and prescription information to a pharmacist expects that such information will be maintained in confidence. This conclusion is supported by 247 Code Mass. Regs. §9.01(19), which provides,
A pharmacist shall maintain patient confidentiality at all times. Confidential information shall include information maintained by the pharmacist in the patient’s records or information which is communicated to the patient as part of patient counseling, which is privileged and may be released only to the patient or to those practitioners and other pharmacists where, in the pharmacist’s professional judgment, such release is necessary to protect the patient’s health and well being; and to such other persons or governmental agencies authorized by law to receive such confidential information.
Moreover, that Massachusetts recognizes a common law cause of action in tort for breach of a physician’s “fiduciary obligation to hold in trust confidential information,” is persuasive authority that pharmacists, who share an analogous relationship their customers in so far as private medical information is concerned, also owe a duty of confidentiality, breach of which may be actionable. See Alberts v. Devine, 395 Mass. 59, 68, cert. denied 474 U.S. 1013 (1985) (“all physicians owe their patients a duty [of confidentiality], for violation of which the law provides a remedy”). As recognized in Alberts, “[n]o litigant is automatically denied relief solely because he presents a question on which there is no Massachusetts judicial precedent . . . The courts must, and do, have the continuing power and competence to answer novel questions of law arising under ever changing conditions of the society which the law is intended to serve.” Alberts, supra, at 69, quoting George v. Jordan Marsh Co., 359 Mass. 244, 249 (1971). Accordingly, as with plaintiffs’ G.L.c. 214, §1B claim, summary judgment *220 on counts two and three (which each allege substantially the same cause of action by different words) is DENIED.
3.Count Four, G.L.c. 93A
A practice or act is deemed unfair under G.L.c. 93A if it is “(1) within the penumbra of a common law, statutory, or other established concept of unfairness: (2) immoral, unethical, oppressive, or unscrupulous: or (3) causes substantial injury to competitors or other business people.” Heller Fin. v. Ins. Co. of North America, 410 Mass. 400, 408 (1991), citing Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 778 (1986); Ellis, p. 11, supra, at 640. Conduct amounting to a violation of privacy may be actionable under G.L.c. 93A. Ellis, supra, at 641 n. 15. Since the Court has concluded that at least plaintiff Kelley is entitled to a trial with regard to the claims in counts one and two, whether CVS’s conduct in these circumstances may have also violated G.L.c. 93A should also await a trial.[17] See Shepard’s Pharmacy v. Stop & Shop Cos., Inc., 37 Mass.App.Ct. 516, 520, review denied 419 Mass. 1102 (1994) (whether particular set of acts is unfair or deceptive is generally a question of fact). Summary judgment on count four is DENIED.
4.Count Five, Tortious Misappropriation of Private and Personal Information
The substance of plaintiffs’ allegations in count five of their complaint is that CVS’s marketing activities with the defendants violated plaintiffs’ privacy, and further amounted to a sale of the plaintiffs’ names, addresses and personal prescription information, from which the defendants profited.[18] Although Massachusetts has not expressly recognized a separate cause of action for tortious misappropriation of private information, and although this count is probably preempted by G.L.c. 214, § IB, or is in any case redundant to count one, the Court finds that summary judgment on this count is inappropriate, as a full record should be developed for purposes of any future appeal.[19]
Four different, common law causes of action for invasion of privacy are recognized in §652A of the Restatement (Second) of Torts (1977):
The right of privacy is invaded by
(a) unreasonable intrusion upon the seclusion of another, as stated in §652B; or
(b) appropriation of the other’s name or likeness, as stated in §652C; or
(c) unreasonable publicity given to the other’s private life, as stated in §652D; or
(d) publicity that unreasonably places the other in a false light before the public, as stated in §652E.
§652C of the Restatement (Second) of Torts, which is most analogous to the cause of action plaintiffs pursue in count five, provides that “[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liabilily to the other for invasion of his privacy.” While the most common factual scenario illustrating this cause of action involves the use of a person’s identity to advertise a product, the rule is not limited to commercial appropriations, but “also applies when the defendant makes use of the plaintiffs name or likeness for his own purposes and benefit, even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one.” Restatement (Second) of Torts, §652C, comment b. See Dwyer, supra, n. 18 (“[t]his branch of privacy doctrine is designed to protect a person from having his name or image used for commercial purposes without consent”). The facts alleged by plaintiffs, i.e. the use of plaintiffs’ private information for the defendants’ financial gain, falls within the scope of this cause of action.
Although this Court finds that at least plaintiff Kelley is entitled at this stage to proceed upon this common law theory, the Court notes that it is doubtful that a separate cause of action for tortious misappropriation may be maintained apart from a claim under G.L.c. 214, §1B. See Shepard’s Pharmacy, p. 15, supra, at 523 (liabilily under G.L.c. 214, §1B premised upon tortious misappropriation theory). As noted above, atp. 14, however, the lack of judicial precedent does not in itself bar relief, and, as the scope of G.L.c. 214, §1B remains unclear, summary judgment on count five is DENIED.[20]
5.Count Six, Conspiracy
CVS urges this Court to grant it summary judgment on plaintiffs’ count alleging a conspiracy among CVS, Elensys and the manufacturer defendants to violate plaintiffs’ privacy rights on the grounds that there are no allegations of coercion in plaintiffs’ complaint, and no evidence of coercion in the present record. While CVS is correct in asserting that one kind of civil conspiracy requires coercion,[21] there is a second type of conspiracy, which requires only that the defendant rendered substantial assistance to the other participants with the knowledge that such assistance is contributing to a common tortious plan. Kurker v. Hill, 44 Mass.App.Ct. 184, 188-89 (1998). See Fleming, supra n. 21, at 51 (conspiracy allegations regarded as allegations of joint participation); Neustadt, supra n. 21, at 325 (same); DesLauries, supra n. 21, at 34 (same); Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994).[22] Liability may also attach if the plaintiffs prove a “common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement.” Aetna Cas. Sur. Co., supra, at 1564.
The allegations of plaintiffs’ complaint and the summary judgment record present a genuine issue of material fact as to these elements so that liabilily might be imposed upon one or more defendants on a conspiracy theory, if further discovery reveals evidence of any of the defendants’ knowledge of CVS’s *221 allegedly tortious acts and their rendering of substantial assistance thereto.[23]
Accordingly, CVS’s motion for summary judgment on count six is DENIED.[24]
Elensys
Plaintiffs charge Elensys with violations of G.L.c. 214, §1B and G.L.c. 93A, with tortious misappropriation of private information and with conspiracy. Plaintiffs seek a stay of summary judgment proceedings pursuant to Mass.R.Civ.P. 56(f) as they have not resumed their Mass.R.Civ.P. 30(b)(6) depositions of Ele-nsys and CVS and assert that they have not received all documents requested.
On the present record, it may be unlikely that a reasonable jury could find Elensys liable on any of the counts in plaintiffs’ complaint where Elensys contends that it received no information about plaintiff Weld, that it only received plaintiff Kelley’s name, address and date of birth, and that it only transmitted Kelley’s name and address to W.A. Wilde. There are, however, questions of fact as to whether CVS provided Kelley’s prescription records to Elensys in connection with any diabetes mailings and whether Elensys utilized such prescription information in fulfilling its obligations under its agreement with CVS.[25] Therefore, as to these issues and as to Elensys’s potential liability as a co-conspirator, necessary discovery should be completed before a final determination on Elensys’s motion for summary judgment is made. Elensys’s motion for summary judgment is thus DENIED without prejudice, and plaintiffs’ motion for a stay of summary judgment proceedings is ALLOWED.
Merck and Glaxo
Merck and Glaxo are charged with conspiracy, violation of G.L.c. 214, §1B and tortious misappropriation. Glaxo is also charged with violation of G.L.c. 93A. Both Merck and Glaxo admit entering into agreements with CVS as part of CVS’s PCP, whereby Merck and Glaxo funded mailings sent to certain of CVS’s customers. Although neither Weld or Kelley received a mailing funded by Glaxo, and only Kelley received the high cholesterol mailing funded by Merck, Merck and Glaxo share a substantially similar posture as it is their alleged participation in CVS’s PCP as a whole upon which plaintiffs premise their liability, and not merely plaintiffs’ receipt of a particular mailing.
Plaintiffs state in their oppositions to the defendants’ motions that they also predicate Merck and Glaxo’s liability upon a conspiracy theory as discussed above, supra, pp. 18-19, although plaintiffs further aver that since discovery is not yet complete, they do not know the full extent of Merck and Glaxo’s participation in CVS’s PCP. Contr'.ry to the defendants’ contentions, potential liabilily need not turn on whether the defendants requested or received confidential patient information; rather, defendants may be held liable as co-conspirators in CVS’s allegedly tortious conduct and for invasion of privacy, if the elements set forth in Kurker, supra, p. 18, and in Alberts v. Devine, 395 Mass. 59, 70-72 (1985), are met. Plaintiffs assert that because the liability of Merck and Glaxo is intimately intertwined with that of CVS and Elensys, the development of a full record as to Merck and Glaxo depends upon substantial discovery from CVS and Elensys so that, at this juncture, plaintiffs cannot intelligently respond to Merck and Glaxo’s motions for summary judgment. The Court finds that necessary discovery directed to the issue of their involvement should be completed before summary judgment is considered as to Merck and Glaxo. Accordingly, Merck and Glaxo’s motions for summary judgment are DENIED without prejudice.[26]
ORDER
It is hereby ORDERED that CVS’s motion for summary judgment is DENIED on all counts as to plaintiff Kelley, and, as to plaintiff Weld, is DENIED without prejudice to renewal at the close of discovery.
It is further ORDERED that the motions for summary judgment of Elensys, Merck and Glaxo are DENIED without prejudice to renewal by each of said defendants at the close of discovery, or earlier if the parties agree that necessary discovery as to such defendant has been completed.

 The motions for summary judgment of Warner-Lambert Company (“Warner”) and of Hoffrnan-Laroche, Inc. have not been heard. Neither defendant participated in the April 20, 1999 hearing on the motions presently before the Court.

 The Court notes that in plaintiffs’ response to CVS’s and Elensys’s Superior Court Rule 9A(b)(5) statements of material facts, the plaintiffs frequently state that they cannot intelligently respond for lack of adequate discovery. Plaintiffs do, however, dispute many, if not all, of the averments made by the defendants in their affidavits in support of their motions for summary judgment. In their affidavit in support of their Mass.R.Civ.P. 56(f) motion, plaintiffs state that the defendants have not fully complied with their requests for production of documents and that their Mass.RCiv.P. 30(b)(6) depositions of CVS and Elensys, which were suspended, have not been completed.

 Defendants do not provide the inception date of the program, and plaintiffs aver that discovery from the defendants has not been forthcoming on this point.

 Plaintiffs assert that the defendants have produced few documents concerning the targeting/mailing procedure.

 In its affidavit, CVS avers that it never gave Elensys access to its database or prescription records, and that Elensys had absolutely no information concerning the 98% of CVS customers that were not included in the PCP. CVS does not address how much information about the remaining 2% of its customers, which were included in the PCP, was disclosed to Elensys.

 Elensys’s agreement with W.A Wilde also contained strict confidentiality provisions.

 The PCP is presently the subject of an ongoing investigation by the Massachusetts Board of Registration in Pharmacy. In April, 1997, after performing similar services for a pharmacy in Maryland, pursuant to a similar program, the Maryland Board of Pharmacy informed Elensys that prior written waivers from customer should be obtained before engaging in such marketing activities.

 CVS contends that it did not disclose prescription information of the plaintiffs to anyone.

 G.L.c. 4, §7, 26th(c) excludes from public record status any “data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy.”

 The Court notes that in Bombardieri v. Registrar of Motor Vehicles, 426 Mass. 371, 375 (1998), the Supreme Judicial Court found that G.L.c. 30, §90A did not proscribe a “DRIVE” program whereby automobile dealerships accessed the Registry’s databases to expedite the registration of new vehicles. While the court discussed the Doe decision, and further went on to state that the DRIVE program did not violate the Federal Driver Privacy Protection Act, 18 U.S.C. §§2721-2725, which protects information contained in motor vehicle records, because participating dealers normally received information that had already been imparted to them by their customers, the impact of Bombardieri on Doe is unclear.

 In Doe, the court noted that some courts have protected names and addresses. See id. at 427, citing Aronson v. United States Dep’t of Housing & Urban Dev., 822 F.2d 182, 186 (1st Cir. 1987); Wine Hobby USA, Inc. v. United States Int. Rev. Serv., 502 F.2d 133 (3d Cir. 1974); Minnis v. United States Dep’t of Agriculture, 737 F.2d 784, 788 (9th Cir. 1984), cert. denied, 471 U.S. 1053 (1985); HMG Marketing Assoc. v. Freeman, 523 F.Supp. 11, 15 (S.D.N.Y. 1980).

 See, e.g., Tower v. Hirschhorn, 397 Mass. 581, 586-87 (1986) (disclosure of confidential medical information to two persons): Bratt v. Int'l Business Machs. Corp., 392 Mass. 508, 518-19 (1984) (disclosure of psychiatric exam results to co-workers and supervisors); Doe v. Town of Plymouth, 825 F.Supp. 1102, 1109 (D.Mass. 1993) (alleged communication of HIV status).

 Plaintiffs contend that further discovery is necessary to ascertain whether, as CVS asserts, the mailings to Kelley, regarding insulin-based diabetes medications, originated from someone other than the defendants.

 If necessary, the appellate courts of the Commonwealth can thus decide the legal issue based on a fully-developed record.

 This may particularly be true in view of plaintiffs’ contention that CVS affirmatively represented, in a brochure provided to its customers, that their prescription files would be kept confidential.

 The present case is distinguishable from two cases, relied on by CVS, in which the sale of lists of names was found not to constitute an invasion of privacy. In Dwyer v. American Express Co., 273 Ill. App. 3d 742 (Ill. App. Ct. 1995), appeal denied, 165 Ill. 2d 549 (1996), acredit card company compiled and rented lists of customer names based on the customers’ spending habits. In Shibley v. Time, Inc., 45 Ohio App. 2d 69 (Ohio Ct. App. 1975), the defendants rented and sold magazine subscription lists. Individuals arguably possess a greater expectation of privacy as to the use of their names in connection with their prescription and medical information than in connection with an individual’s spending and reading habits.

 G.L.c. 214, §3A does provide for a similar cause of action: “Any person whose name, portrait or picture is used within the commonwealth for advertising purposes or for the purposes of trade without his written consent may bring a civil action in the superior court against the person so using his name, portrait or picture, to prevent and restrain the use thereof; and may recover damages for any injuries sustained by reason of such use.” See Tropeano v. Atlantic Monthly Co., 379 Mass. 745 (1980). Plaintiffs do not allege a violation of this provision, but allege only violations of G.L.c. 214, §1B, G.L.c. 93A and the common law.

 Although plaintiffs may proceed upon multiple alternative theories, they may not, of course, recover multiple damages for the same harm. See Shepard’s Pharmacy, supra, at 524; Restatement (Second) of Torts, §652A, comment d (when privacy is invaded in two or more ways, the plaintiff may maintain his cause of action upon any or all of the grounds but may only have one recovery of damages).

 See, e.g., Fleming v. Dane, 304 Mass. 46, 50-51 (1939) (“[t]he most common illustration of such a ‘conspiracy’ is to be found in the combined action of groups of employers or employees, where through the power of combination pressure is created and results brought about different in kind from anything that could have been accomplished by separate individuals"); Neustadt v. Employers' Liability Assurance Corp., Ltd., 303 Mass. 321, 325 (1939), quoting Caverno v. Fellows, 286 Mass. 440, 444 (1934) (“[t]here can be no independent tort for conspiracy unless in a situation "where mere force of numbers acting in unison or other exceptional circumstances make a wrong”); DesLauries v. Shea 300 Mass. 30, 33 (1938) (same).

 See also Alberts, supra at 70 (recognizing that one may be held liable for inducing physician to violate duty of confidentiality to patient).

 The present case is distinguishable from Kyte v. Philip Morris Inc., 408 Mass. 162, 167 (1990), where summary judgment was appropriately granted in favor of defendant on plaintiffs’ claims that the defendant had conspired with Store 24 to illegally sell cigarettes to minors because there was no evidence of a common design or concerted action. Conversely, in the present case, it is undisputed that CVS and the drug manufacturers entered into contracts implementing the challenged marketing program and fulfilled a variety of responsibilities related to said marketing program. Here, unlike Kyte, it cannot be said that it is undisputed that these defendants had no knowledge of their role in the allegedly tortious conduct. See id. at 168. Further discovery is required.

 As a final note, CVS and the other defendants contend that prohibition of marketing programs such as the PCP infringes upon their freedom of speech. However, plaintiffs do not challenge the dissemination of advertising materials, but the method of obtaining the names and prescription information of the targeted addressees. Moreover, the plaintiffs’ right of privacy might in any event outweigh the defendants’ asserted First Amendment right to distribute commercial speech. Rowan v. United Stales Post Office Dep’t 397 U.S. 728, 736 (1970) (“without doubt, the public postal system is an indispensable adjunct of every civilized society and communication is imperative to a healthy social order. But the right of every person ‘to be let alone’ must be placed in the scales with the right of others to communicate”). See Frisby v. Schultz, 487 U.S. 474, 484 (1988) (speech may be circumscribed to protect privacy); Carey v. Brown, 447 U.S. 455, 470 (1980) (same); Bigelow v. Virginia, 421 U.S. 809, 826 (1975) (advertising is subject to reasonable regulation that serves legitimate public interest); Millstone v. O'Hanlon Reports, Inc., 528 F.2d 829, 833 (8th Cir. 1976).

 Elensys’s agreement with CVS specifically contemplates Elensys having access to CVS’s pharmacy records and customers’ prescription information. Notably absent from Elensys’s affidavit is any averment to the effect that Elensys never received any prescription information about any CVS customer. Elensys does admit receiving some information, the scope of which is unidentified, about the 2% of CVS customers designated to receive mailings. Moreover, Kelley’s deposition testimony also raises the possibility that his prescription information was divulged to Elensys in connection *223 with a diabetes mailing. Further discovery might reveal evidence which gives rise to a material issue of fact as to whether CVS did in fact disclose customer prescription information regarding Kelley or Weld to Elensys and others. Disclosure of confidential presciption or medical information might constitute an invasion of privacy under G.L.c. 214. See Tower, supra, at 586-87; Bratt, supra, at 519; Doe, supra, at 1109.

 At such time that the parties may agree that necessary discovery has been completed as to any one of the defendants, Elensys, Merck or Glaxo, the parties may complete the summary judgment record as to such defendant and request the clerk to schedule a hearing, even if discovery as to other defendants is not completed.