Kane, Robert J., J.
This case involves a dispute between seasoned real estate developers over a real estate transaction. In the first phase of this litigation, the court ordered the defendants to convey a parcel of real property to the plaintiff, Wayne Kurker (“Kurker”), for the agreed upon contract price of $2,000,000. The court also concluded that defendant Stuart A. Bornst-ein (“Bomstein”) breached the covenant of good faith and fair dealing, and intentionally violated G.L.c. 93A, § 11. As previously agreed upon by the parties, the final phase of litigation involves the issue of remedies. This matter is before the court on Kurker’s motion for a general real estate attachment. The court held a hearing on Kurker’s motion on August 4, 2009. For the following reasons, Kurker’s motion for real estate attachment will be DENIED.
DISCUSSION
I.Standard of Review
“Subsequent to the commencement of any action under these rules,” real estate may “be attached and held to satisfy the judgment for damages and costs which the plaintiff may recover.” Mass.R.Civ.P. 4.1 (a). Under Mass.R.Civ.P. 4.1(c), the court may approve an attachment upon a finding “that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance shown by the defendant to be available to satisfy the judgment.”
II.The Parties’ Arguments
Kurker seeks a general real estate attachment as to the defendants in an amount of either $8,209,700 or $4,222,983. With supporting affidavits, Kurker argues he is entitled to an attachment of at least $4,222,983 because (1) Kurker has expended $283,587.44 in attorneys fees while litigating this matter before this court; (2) his expert calculates it will cost $346,423 to restore the premises with necessary repairs; (3) Kur-ker lost dockage and dry storage fees estimated at $1,986,717, due to the defendants’ breach of con-tractu[2] and (4) he is entitled to $1,889,843 in interest since the filing of the complaint. Kurker arrives at the amount of $8,209,700 by adding the value of the premises, $2,000,000, and another $1,986,717 to double actual damages in accordance with G.L.c. 93A, §11. In response, the defendants argue that Kurker is not entitled to an attachment because precedent precludes awarding damages for breach of contract in addition to specific performance; Kurker has not otherwise carried his burden in demonstrating a reasonable likelihood of obtaining damages in excess of the $2,000,000 purchase price; and Kurker has not demonstrated the causal nexus required for damages under G.L.c. 93A, §11.
III.Whether the Award of Specific Performance Precludes an Award of Damages
The court concludes that precedent in this Commonwealth precludes awarding damages in addition to specific performance for breach of a real estate contract. In Perroncello v. Donahue, 448 Mass. 199, 206 (2007), the Supreme Judicial Court held that “(t]o award liquidated damages against the buyer for his failure to close and also specific performance to the seller requiring the buyer to acquire the properly by a date certain at the contracted price, would violate the fundamental principles of contract law.” The court reasoned that specific performance and damages for breach of contract are alternative remedies. Id. at 204, and cases cited. See also Restatement (Second) of Contracts §378 comment d, at 230 (1981) (“the remedy of specific performance . . . and that of damages for total breach of contract are inconsistent”).
Kurker cites other language in Perroncello to argue that contract damages are appropriate compensation for the defendants’ delay in performance. 448 Mass. at 205-06, citing Restatement (Second) of Contracts §378 comment d (“A parly who seeks specific performance or an injunction may... be entitled to damages to compensate him for delay in performance”). Kurker, however, overlooks the narrow scope of damages for delay: “A seller of land who cannot perform as agreed because of a deficiency in area or a defect in title may be ordered to transfer all that he can, with compensation for the resulting claim for partial breach. The compensation may take the form of damages, restitution of money already paid or an abatement of the price not yet paid.” Restatement (Second) of Contracts §358 comment c, at 167-68. In fact, as expressed in a case cited by Kurker, “(i]t is settled that, being able and willing to perform, the purchaser can have an agreement for the sale of land specifically enforced in so far as the vendor is capable of compliance, with a deduction from the purchase price for any deficiency in title, or of quantity, or of quality of the estate to be conveyed.” Smith v. MacAlister, 1 Mass.App.Ct. 22, 25 (1972) (omitting citations and quotations). However, this category of damages does not include lost profits, and Kurker has not cited any legal authority support *145 ing such a proposition. Therefore, considering the award of specific performance, the court concludes Kurker is not entitled to $ 1,986,717 in lost income due to the defendants’ breach of contract.[3]
Moreover, while Kurker seeks $1,986,717 for lost dockage and dry storage fees in addition to specific performance of the agreement, Kurker does not address the accompanying costs in obtaining such lost profits. “The basic principle of contract damages is that the aggrieved party should be put in as good a position as if the other party had fully performed.” Quinn Bros., Inc. v. Wecker, 414 Mass. 815, 817 (1993). In Bornstein’s affidavit, he estimates the cost of performance and operations at the property, a marina, to be $2,048,000.[4] Courts have recognized that an offset may be necessary in order to give the aggrieved party the benefit of the bargain, and to avoid a windfall. See Costello v. Pet, Inc., 17 Mass.App.Ct. 382, 388 (1984). Consequently, considering the evidence in the record, the court concludes Kurker has not shown a reasonable likelihood of recovering such an amount of lost profits.
IV. Whether Kurker is Entitled to an Offset from the Purchase Price
The court recognizes that Kurker has the right to apply collected dockage fees towards the purchase price of the premises. The agreement specifically provided: “Buyer to market and collect dockage and put monies into escrow of which 100% will [be] considered as part of the down payment and applied 100% towards the purchase price providing Buyer buys property.” At this stage, however, the court agrees with the defendants that Kurker has not offered any evidence concerning the amount of dockage fees he marketed and collected pursuant to the agreement. Consequently, at this stage, any discussion of such a figure would be speculative.
In agreement with Kurker, the court recognizes that an offset for property deficiencies is consistent with contract law, and not precluded by an award of specific performance. See Smith, 1 Mass.App.Ct. at 25. While Kurker could offset deficiencies in the property from the purchase price, the burden is on Kurker to demonstrate such deficiencies, as the party seeking an attachment. Here, with the support of an affiant, Kurker contends it will cost $346,423 to restore the premises, since the property has fallen into disrepair. The defendants, however, submitted the affidavit of Thomas Quinn, who avers to being personally involved in the management and maintenance of the property, and that “[a]ll reasonably required maintenance and repairs on the marina have been performed.” Therefore, considering the evidence in the record, the court cannot conclude that Kurker has a reasonable likelihood of obtaining an offset for property deficiencies in the amount of $346,423.
V. Whether Kurker Has Shown a Causal Nexus as Required for Damages under G.L.c. 93A
While Kurker is correct that G.L.c. 93A compensates an aggrieved party for all foreseeable and consequential damages, see DiMarzo v. American Mut. Ins. Co., 389 Mass. 85, 101 (1983), damages must be causally related to the conduct that violated the statute. See Shepard’s Pharmacy, Inc. v. Stop & Shop Cos., 37 Mass.App.Ct. 516, 522 (1994) (“In the absence of a causal relationship between the alleged unfair acts and the claimed loss, there can be no recovery”).[5] In the December 9,2008 Order, this court concluded that Bomstein intentionally violated G.L.c. 93A, §11, based on his breach of the implied covenant of good faith and fair dealing. Specifically, the court concluded, “Bornstein’s actions after May 1, 2001 violated the contract’s covenant of good faith and fair dealing. The final [Offer to Purchase] in paragraph seven required Bomstein to reasonably help Kurker get ‘the proposed project approved.’ His actions in attempting to get the Commission to deny Kurker’s plans contravened Kurker’s rights under the final [Offer to Purchase].” Therefore, under G.L.c. 93A, §11, Kurker is entitled to at least double the amount of his actual damages, arising from Bomstein’s breach of covenant, which would encompass the costs incurred in securing approval before the Conservation Commission,[6] as well as reasonable attorneys fees and costs.
At this stage of the proceedings, the court agrees with Bomstein that Kurker has not specified how the proposed $1,986,717 in lost income is causally related to the breach of covenant. There is nothing in Kurker’s supporting affidavits identifying the damage actually caused by Bornstein’s opposition before the Conservation Commission. Kurker also does not identify how the lost profits are causally related to the opposition before the Conservation Commission, rather than Bomstein’s separate breach in refusing to convey the property. Consequently, as Kurker has failed to identify the damages causally related to Bornstein’s breach of covenant, the court concludes Kurker has not shown a reasonable likelihood of recovering $1,986,717 in actual damages, which would be at least doubled under G.L.c. 93A, §11.
As a prevailing party, under G.L.c. 93A, §11, Kurker is entitled to reasonable attorneys fees and costs, if the unfair or deceptive conduct had an adverse effect upon him. See Jet Line Serv’s., Inc. v. American Employers Ins. Co., 404 Mass. 706, 718 (1989). With a supporting affidavit, Kurker contends he has spent $283,587.44 litigating this matter before this court. Assuming the court found this amount to be reasonable, it would not surpass the $2,000,000 in security that Kurker already has on the premises in question, through an injunction and the order for specific performance.
Even assuming, Kurker successfully established that his attorneys fees are included in the actual *146 damages from Bornstein’s breach of covenant whereby Kurker became forced to litigate this matter, and the court tripled the amount consistently with G.L.c. 93A, §11, the amount would still fall far short of the $2,000,000 threshold. Therefore, the court concludes Kurker has failed to demonstrate a reasonable likelihood of obtaining a judgment in excess of the $2,000,000 purchase price. Consequently, Kurker has failed to carry the burden necessary to obtain a general real estate attachment in the amount requested.
ORDER
For the forementioned reasons, it is hereby ORDERED that plaintiffs motion for real estate attachment be DENIED.

The agreement provided: “Buyer to market and collect dockage and put monies into escrow of which 100% will [be] considered as part of the down payment and applied 100% towards the purchase price providing Buyer buys property.”

Consequently, Kurker has not established a reasonable likelihood of recovering $1,889,843 in interest for breach of contract. See G.L.c. 231, §6C (“In all actions based on contractual obligations, upon a verdict finding or order forjudgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum, from the date of the breach or demand”) (emphasis added).

Bornstein describes such costs: paying interest on the financing required to purchase the property, annual real estate taxes, the cost of dredging the Hyannis harbor, the cost of removing and replacing docks and piers as proposed in Kurker’s project, and the cost of constructing his planned facilities. Bomstein avers that the $2,048,000 does not include other operational costs for the marina, such as salaries, benefits, and insurance.

Kurker cites Miller v. Risk Mgmt. Found, of the Harvard Med. Insts., 36 Mass.App.Ct. 411, 420 n.15 (1994), for the proposition that the 1989 Amendment may have created a different standard for actual damages, with a definition covering all claims arising out of the same underlying transaction or occurrence. After Miller, however, courts have continued to require a causal relationship. See Frullo v. Landenberger, 61 Mass.App.Ct. 814, 822 (2004) (“the plaintiffs were still required to demonstrate that there was a causal nexus between the defendant’s unlawful acts and their damages”).

This court recognizes that Kurker may claim that the 93A damages also cover all attorney fees incurred in prosecuting plaintiffs successful claims.