Curtin, J.
This is a G.L.c. 255, §26 action to enforce a lien on the defendant’s antique Mercedes Benz for the balance owed for restoration work performed by the plaintiff. After a bench trial, judgment was entered for the plaintiff on both its complaint and the defendant’s counterclaims. The defendant has appealed pursuant to Dist./Mun. Cts. R. A. D. A., Rule 8C.
The record indicates that in 1995, defendant Richard Card (“Card”) paid $2,000.00 for a 1972 Mercedes Benz sedan with an odometer reading of 170,000 miles. In June, 1997, Card brought the twenty-five year old car to plaintiff DeVito Auto Restoration (“DeVito”) after the trunk and driver’s side fender had been damaged by a fallen tree. DeVito is owned and operated by a medical journal publisher as a sideline for the purpose of restoring antique and rare automobiles. DeVito does not do collision or insurance work, does not rebuild engines or transmissions, does not have a tow truck, and does not have a mechanic on staff. DeVito is not registered as an autobody shop, and refers customers requiring such work out to autobody shops. DeVito does not repair mechanical malfunctions. Instead, DeVito restores antique cars to their original appearance and condition, and a typical full restoration requires up to three years of work at a cost of twenty-five to thirty thousand dollars.
DeVito gave Card an initial written estimate of $3,500.00, which covered a simple, exterior paint job, the removal of surface rust and welding of the left front fender, replacement of the trunk lid with a used one, and work on part of a rocker panel and the center support for the front bumper. As work begán, however, DeVito employee Maruish Jachorowicz (“Jachorowicz”) discovered far greater deterioration in the Mercedes than was apparent at the time of the original estimate. For example, rocker panels were rotted, the floor board of the trunk was so rusted that there were holes the size of tennis balls, and left rear fender rust had rotted through to the wheelhouse. The additional work included replacement of bumpers, a new trunk interior and rocker panel work. Card repeatedly gave Jachorowicz his oral authorization to do the additional restoration work “the right way.” Card was in fact actively involved in the entire project, spending at least one day a week at DeVito’s attempting to do some of the minor aspects of the work himself. He was often incapable of completing such work, however, and requested the assistance of DeVito employees to finish the jobs he had started. He was not charged for their labor.
Card also significantly expanded the scope of the restoration as it progressed by requesting additional or more expensive work. For example, after the Mercedes had been primed for painting with a DuPont formula, Card requested the more expen *246 sive, Mercedes factory-original Glazurite paint. The change required DeVito to do wet sanding and additional scuffing work, and to put on a new primer and base coat before the costly Glazurite finish could be applied. Card also requested the painting, inter alia, of hub caps, doorjambs and both sides of the engine compartment. Card asked to have the sun roof removed, a new gasket installed, and the roof reattached. He ordered the replacement of the windshield with a new windshield and gasket. Card found seats in an old Mercedes on the DeVito lot and requested that those seats be installed in his car. Card later removed part of the seats from DeVito’s premises without paying for them. They have not been returned. Card then asked Jachorowicz to replace the Mercedes door panels to match the new seats. He arrived at the shop one day with new carpeting, which required removal of all of the old carpeting in his car. Card ordered new splash shields.
Jachorowicz informed Card at one point that the cost of the restoration work had already climbed to twice the original estimate. Card was also given written estimates for some of the additional work (new windshield and gasket, trunk liner and refinishing) and oral estimates for other extra work (e.g., sun roof, bumpers and supports, replacement seats, rear fenders). DeVito’s labor charge of $50.00 per hour was posted in the shop. By June, 1998, DeVito had devoted a total of 359 labor hours to Card’s Mercedes, and had used $2,348.00 in materials. The total bill reached $17,980.00. Card had made interim payments totaling $4,500.00, and he refused to make any further payments. In an effort to appease Card, DeVito discounted its hourly labor charge from $50.00 to $32.00, significantly reduced the number of hours billed, and presented Card with a bill of $11,200.00. Card still refused to pay the $5,700.00 balance owed, DeVito ordered all work stopped, and this action followed.
The trial judge made written findings and rulings, inter alia, that DeVito was not a repair shop, that Card breached the parties’ agreement, and that Card had failed to prove his counterclaims.[1] Judgment was entered for DeVito in the amount of $5,700.00, plus interest and costs.[2] The court ordered the G.L.C. 255, §25 lien enforced, and authorized DeVito to sell the Mercedes, pursuant to the express provisions of §26, to satisfy the judgment if Card failed to do so by a specified date.
There was no error.
1. Card contends initially that the court’s ruling enforcing DeVito’s G.L.c. 255, §25 “mechanic’s” lien was inconsistent with its finding that DeVito was not a repair shop subject to the Attorney General’s Regulations. Card failed, however, to file a motion to correct the alleged inconsistency or a motion for a new trial to preserve this issue for appellate review. Cook v. Kozlowski, 351 Mass. 708 (1967); Diorio v. Bragan, 2000 Mass. App. Div. 29.
In any event, there was no inconsistency, and Card’s argument that DeVito was not entitled to a G.L.c. 255, §25 lien is devoid of merit. The statute provides, in pertinent part:
*247 Persons maintaining public garages for the storage and care of motor vehicles brought to their premises or placed in their care by or with the consent of the owners thereof and persons engaged in performing work upon or in connection with the inspection, reconditioning and repairing of motor vehicles shall have a lien upon such motor vehicles for proper charges due them for storage, work and care of the same.
Contrary to Card’s contention, DeVito was not required to establish that it engaged in the “inspection, reconditioning and repair [emphasis supplied]” of automobiles to obtain a §25 lien. That portion of the statute is phrased in the disjunctive, and alternatively authorizes a lien for persons “engaged in performing work upon ... motor vehicles.” Based on the “plain and ordinary meaning” of the statutory language in question, Massachusetts Broken Stone Co. v. Weston, 430 Mass. 637, 640 (2000); Case of Benson, 47 Mass. App. Ct. 756, 758 (1999), the trial judge properly enforced DeVito’s G.L.c. 255, §25 lien for the balance of the restoration charges owed by Card.
2. Card’s remaining argument is that the trial court’s finding that DeVito was not a repair shop was error and, consequently, he was entitled to judgment in his favor on his G.L.c. 93A counterclaim for DeVito’s unfair and deceptive acts in violation of the Attorney General’s repair shop regulations. See 940 CMR 5.05.[3]
Contrary to Card’s contention, the evidence amply warranted the trial judge’s determination that DeVito was not a “repair shop” as that term is defined in the regulations.[4] DeVito offered specialized restoration services for antique (25 years or older) and rare automobiles. Its work customarily required several months, if not years, to complete and routinely cost twenty to thirty thousand dollars. DeVito was not an autobody shop and did not provide towing, or the typical engine, transmission, mechanical or maintenance services characteristic of an automobile repair shop or garage. There was no error in the trial court’s finding that DeVito was not a repair shop subject to the requirements of 940 CMR 5.05.
None of Card’s remaining assertions of alleged unfair and deceptive acts by DeVito required a finding for Card on his G.L.c. 93A counterclaim. The evidence would have fully warranted a finding that the restoration work was not completed within the tíme originally agreed because of continuing changes in, and additions to, the services requested by Card. Further, it was only when Card refused to make any additional payments that work was stopped. There was undisputed evidence that the Mercedes was inoperable at the time of trial only because Card himself had previously removed both the dashboard, which left electrical wires *248 dangling and disconnected, and the battery. Out of all the additional work performed, Card testified at trial that only the rocker panel replacement and the painting of the battery tray and air filter housing were unauthorized.[5] However, contrary testimony, which the judge was free to credit, was given by Jachorowicz. Ultimately, DeVito provided approximately 100 hours of labor for which it did not bill Card, and reduced its hourly rate to $32.00 for the labor actually charged. Whether, in the context of the parties’ transaction, DeVito’s conduct constituted unfair and deceptive acts actionable under G.L.c. 93Awas a question of fact for the trial court. Lally v. Volkswagen Aktiengesellschaft, 45 Mass. App. Ct. 317, 336 (1998); Shepard’s Pharmacy, Inc. v. Stop & Shop Cos., Inc., 37 Mass. App. Ct. 516, 520 (1994). Card has failed to advance any evidence which would have required the trial judge, as a matter of law, to make a finding in his favor.
Judgment affirmed. Appeal dismissed.
So ordered.

 Card counterclaimed for DeVito’s alleged negligence, intentional infliction of emotional distress, breach of contract and G.L.c. 93A violations. He presented little, if anything, in support of the first three. The apparent basis of the emotional distress count, e.g., was that DeVito’s failure to have the car ready for Card’s honeymoon required Card to use a different Mercedes he had purchased which had no air conditioning, a fact which engendered arguments with his new wife. In any event, Card has effectively waived appellate consideration of the court’s dismissal of the first three counterclaims by failing to address them in his brief. Dist./Mun. Cts. R. A. D. A., Rule 16(a) (4). See also Jach v. Trust Ins. Cos., 1999 Mass. Div. 70, 73 and cases cited. Card’s G.L.c. 93A counterclaim is discussed, infra.

 DeVito has not appealed the court’s denial of its claim for storage fees.

 Card alleges violations by DeVito of numerous provisions of 940 CMR 5.05. However, if the Regulations had been applicable to DeVito, the evidence would have reasonably warranted only a finding of a violation of §5.05(5), which makes it an unfair and deceptive act for a repair shop to fail to maintain written records of a customer’s oral authorizations for repair work.

 “Repair Shop means a person who, for compensation, engages in the business of diagnosing or repairing malfunctions of or damage to motor vehicles, including auto body shops and retail stores which offer automotive services, but excluding: (a) the Commonwealth of Massachusetts and the United States government and all agencies, departments and political subdivisions thereof; (b) any industrial or commercial establishment which repairs, services or maintains vehicles for its own use; and (c) for purposes of 940 CMR 5.05(2) through (5) and (9), gasoline service stations which engage solely in minor repair services such as changing or repairing tires, lubrication, replacing fan belts and oil and air filters, installing light bulbs, batteries, windshield wiper blades and other minor accessories, and the like.” 940 CMR 5.01.

 Card testified that he observed DeVito employees performing this work, but did not question or stop them.