Ripps, J.
This appeal, pursuant to Dist/Mun Cts. RA.D.A, Rule 8C, concerns the applicability of the garage keepers lien statute, G.L.c. 255, §§25, 26, to a machine shop that specializes in antique automotive engine overhauls, to collect *52 for evaluation and storage charges.
The judge could have found the following facts. The defendant, Mr. Harabedian, (Harabedian) owned one of nineteen 1967 Dodge Chargers with 426 Chrysler Hemi Engine and standard transmission, that was built for racing. The plaintiffs, the Gulbankian brothers, own J&M Machine Shop (J&M) which specialized in rebuilding antique automotive engines and other engines.
During August, 1997, Harabedian’s engine was burning oil and smoking. He removed it from the car and brought it to J&M for evaluation. Their agreement was that J&M would tear down, clean, magnaflux (test for stress cracks), and evaluate the engine at a rate of $50.00 per hour. J&M would then consult with Harabe-dian as to what work needed to be done. On the wall near where the agreement was written up on a repair slip, was a sign that read “ENGINES LEFT OVER 30 DAYS WILL CHARGED A $12 STORAGE FEE PER DAY.” After J&M tore down the engine, magnafluxed the crankshaft and evaluated the problem, they invited Harabedian to the shop for a consultation. J&M informed him that they spent four hours tearing down the engine in order to evaluate it. Harabedian agreed to the $200 charge. J&M then spent two hours going over the dismantled engine parts to explain what was needed and why. J&M estimated the repairs to cost between $5,000 and $7,000. Harabedian said he did not have the money, wanted to think about it, and wanted the estimate in writing. The engine was then in boxes covering a 16 square foot area of the plaintiff’s 1800 square foot garage.
Between August and October, 1997, J&M and Harabedian had numerous conversations about the engine, including whether cheaper parts could he used, and whether all the work needed to be done. Harabedian remained unable to afford tiie recommended reconditioning, and J&M would not do the work and warranty it, if unacceptable parts were used and less than all the necessary work was done.
During November, 1997, to solve the problem, J&M had another customer offer to buy the whole car, but Harabedian refused the offer. Thereafter, J&M began requesting that Harabedian remove the engine and pay for the labor. Between December, 1997 and February, 1998, there were several phone calls between the parties in which J&M requested that Harabedian remove the engine and pay the evaluation charge, or he would be charged for storage. Shortly thereafter, J&M could not reach Harabedian because his phone was disconnected.
During April 1998, J&M wrote to Harabedian notifying him that he owed $1,000 for storage and that the engine might be sold to collect Harabedian called J&M and refused to pay the storage. J&M suggested that he pay a total of $500 instead, but he refused.
In September 1998, counsel for Harabedian sent J&M a c.93A Demand Letter alleging that J&M, as a “repair shop,”[2] had violated provisions of c. 100A and 93A and that the engine should be reassembled and returned to Harabedian in exchange for the $200 evaluation fee. J&M’s counsel timely responded with an offer to settle for $500, warning that unless settlement was reached, J&M would file a complaint for the storage seeking a lien.
By letter dated May 7,1999, J&M’s counsel notified the defendant that the storage charge, at a reduced rate of $6 per day, plus the evaluation charge, was $4026 and that J&M would be filing an action.
*53 Harabedian filed a complaint against J&M in the Worcester District Court on June 2, 1999, 9962 CV 932. J&M complained against Harabedian in the Westborough District Court on June 4. 1999, 9967 CV 309. A judge dismissed Harabedian’s Worcester complaint and he filed an answer and counterclaim in the Westborough action alleging several violations of c. 93A and 940 CMR 5.05.[3]
The case was tried before a judge on January 18, and February 1, 2001. At the conclusion of the evidence, Harabedian’s counsel filed four Requests for Rulings of Law stating principles of law, none of which tested the sufficiency of the evidence.[4]
On February 12, 2001, the four requests were allowed, and judgment entered for J&M for $4,087, and for J&M on Harabedian’s counterclaims.
On February 22,2001, J&M requested a lien and an order to sell the engine. On February 23,2001, Harabedian filed an Opposition to J&M’s request for a lien and order of sale and filed a Motion for Reconsideration and For Clarification of the Judgment On February 26,2001, Harabedian filed a Motion Requesting the Court Enter or Amend Finding or in the Alternative Grant a New Trial or Alter or Amend Judgment At para. 13 of that motion, the defendant filed Requests for Rulings testing the sufficiency of the evidence as to whether J&M was entitled to storage. Because leave was neither asked for, nor granted for the late filing of the requests, the judge was not required to act on them. Where there are no requests for rulings properly filed by the defendant pursuant to M.R.C.P., Rule 64A, a mere objection to, or charge of error in, the trial court’s general finding for the plaintiff presents no question for appellate review. Ducker v. Ducker, 1997 Mass. App. Div. 147, McDonough v. Ferrari Pool N' Patio, 2000 Mass. App. Div. 100, 101.
On March 12, 2001, the trial judge denied those motions and allowed J&M’s motions for the lien and sale. The defendant has appealed, claiming that the plaintiff was not entitled to a lien or to sell the engine. Although the judge made no written findings, he implicitly found that J&M had a right to evaluation and storage fees and to enforce the judgment with a lien pursuant to c. 255, §§25, 26.[5] There was sufficient evidence for the judge to find that J&M “engaged in performing work upon or in connection with the inspection, reconditioning and repairing of motor vehicles” when an engine, is dismantled, evaluated, and/or repaired.
The defendant argued that the judge’s implicit ruling that J&M was entitled to a lien also meant that he had to find that J&M was a “repair shop”; and, that if J&M was a “repair shop,” the undisputed evidence was that it failed to comply with sev *54 eral provisions of 940 CMR 5.05 and he was entitled to relief on counterclaims.
The question then is whether the judge could have found that J&M engaged in performing work upon or in connection with the inspection, reconditioning and repairing of motor vehicles for purposes of c. 255, §25, but was not a repair shop under 940 CMR 5.05.
In DeVito Auto Restoration v. Card, 2000 Mass. App. Div. 245, the Northern Division of this court held that a business that restores antique cars to their original appearance and condition was not a repair shop because “[i]ts work customarily required several months, if not years to complete[6] and routinely cost twenty to thirty thousand dollars” and that “it did not provide towing or typical engine, transmission, mechanical or maintenance services characteristic of an automobile repair shop or garage.” By analogy, J&M did not perform general automotive repairs, nor autobody work, nor towing, but specialized in rebuilding antique automobile engines. Ninety percent of its work came from referrals, some from trade magazines and motors come to the shop all over the country and the world. Atypical rebuild costs $5,000-$10,000, and therefore, each job would be expected to take much longer than a day.
Consistent with DeVito, there was ample evidence from which the judge could have found that J&M did work in connection with the inspection, reconditioning and repairing of motor vehicles, entitling it to charge for storage, and to a lien under §25, but that it was not a “repair shop.” “If the trial judge makes one of several possible choices of what facts are supported by the evidence, the judge’s choice is not clearly erroneous.” Macone Bros., Inc. v. Strauss, 1997 Mass. App. Div. 95, 97, quoting W. Oliver Tripp Co. v. American Hoechst Corp., 34 Mass. App. Ct. 744, 751 (1993). Therefore, the judge did not err in allowing the lien and approving a sale under §26.
The judgment of the trial court is affirmed and the appeal dismissed.

 “Repair Shop” means a person who, for compensation, engages in the business of diagnosing or repairing malfunctions of or damage to motor vehicles, including auto body shops and retail stores which offer automotive services, but excluding ... gasoline service stations which engage solely in minor repair services such as changing or repairing tires, lubrication, replacing fan belts and oil and air filters, installing light bulbs, batteries, windshield wiper blades and other minor accessories, and the like. 940 CMR 5.01.

 That per 940 CMR 5.05, it is an unfair or deceptive act or practice for a “repair shop”: (3) (a) to fail to list specific repairs and the price for parts and labor; (4) (a) to fail to notify the defendant that it charged for storage fees; (5) to fail to keep written records relating to the oral authorization of work; and also that it failed to allow the defendant to recover his properly.

 Pursuant to M.RC.R, Rule 64A, “requests for rulings of law shall be in writing and shall be presented to the court before the beginning of any closing arguments unless special leave is given.” Per 64A(b) (1): “to obtain a ruling that the evidence is sufficient as a matter of law to permit a general finding in the requesting party’s favor, the requesting party shall file a written request for such ruling substantially in the following language: “The evidence warrants a finding for _ (requestor).”

 Persons maintaining public garages for the storage and care of motor vehicles brought to their premises or placed in their care by or with the consent of the owners thereof and persons engaged in performing work upon or in connection with the inspection, reconditioning and repairing of motor vehicles shall have a lien upon such motor vehicles for proper charges due them for the storage, work and care of the same. c. 255 §25, para. 1.

 Pursuant to 940 CMR 5.05 (6) a repair shop is expected to “complete repairs on a motor vehicle on the day the vehicle is delivered to the repair shop by the customer unless the customer is informed of and consents to a further delay or the repair shop can show that the delay was caused by circumstances beyond its control and which could not have been reasonably anticipated,” or it is an unfair and deceptive act.